UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
NEW YORK SECTION AMERICAN CAMPING
ASSOCIATION, INC. d/b/a AMERICAN CAMP
ASSOCIATION, NEW YORK AND
NEW JERSEY,

                                  Plaintiff,

            -against-

PATRICIA S. RUPPERT, as Commissioner of
Rockland County Department of Rockland and as
Commissioner of Health of the Rockland County
Health District, JEFFREY OPPENHEIM, as
Member of Rockland County Board of Health,
MAUREEN CREEGAN, as Member
of Rockland County Board of Health, MARY JEAN
MARSICO, as Member of Rockland County
Board of Health, CLEMENT OSEI, as Member
of Rockland County Board of Health, ANITA
CHATLANI SHAH, as Member of Rockland
County Board of Health, ROCKLAND COUNTY
BOARD OF HEALTH, and COUNTY OF
ROCKLAND, including its DEPARTMENT
OF HEALTH,

                                  Defendants.
------------------------------------------------------------X

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

19-CIV-_____ (      )

The Plaintiff, NEW YORK SECTION AMERICAN CAMPING ASSOCIATION, INC. d/b/a AMERICAN CAMP ASSOCIATION, NEW YORK AND NEW JERSEY, by and through their attorneys, FEERICK NUGENT MacCARTNEY PLLC, complaining of the Defendants herein, respectfully alleges upon information and belief as follows:

## INTRODUCTION AND NATURE OF THIS ACTION

1.      Defendants, by way of two unexpected Orders issued by the County's unelected Commissioner of Health just weeks before summer camp season began, are holding Plaintiff's member camps hostage by mandating they either surrender their constitutional rights or

otherwise lose their ability to operate.  Plaintiff's member camps cannot be put to this kind of coercive predicament requiring they give up its constitutional rights, now and in the future, under threat of a denial/revocation/suspension of their permit to operate.

2.      Plaintiff, a member based, dues supported, representational organization, brings this action for declaratory and injunctive relief barring enforcement of Defendant Health Commissioner Ruppert's Orders, dated on or about June 4, 2019, (the "Challenged Orders") as unconstitutional and unlawful, pursuant to 42 U.S.C. § 1983, under the Fourth and Fourteenth Amendments of the United States Constitution and Article I § 12 of the New York State Constitution.   The Challenged Orders violate Plaintiff's members' right to be free from unreasonable searches, seizures, and interceptions, by calling for the creation, maintenance, and continued surrender to the Defendants of their proprietary staff/customer lists, as well as confidential and sensitive personal information regarding staff and campers.  See, e.g., City of Los Angeles v. Patel , 576 U.S. 440, 125 S.Ct. 2443, 192 L.Ed.2d 455 (2015); Airbnb, Inc. v. City of New York, 373 F.Supp.3d 467 (S.D.N.Y. 2019); and Shankman v. Axelrod, 137 A.D.2d 255 (3d Dept. 1988), affirmed 73 N.Y.2d 203 (1989).  See also Airbnb v. City of Boston, 2019 WL 1981043 (D.Mass. May 3, 2019).

3.      This lawsuit does not concern the correctness of the Challenged Orders' vaccination requirement.   Rather, it challenges the Challenged Orders' mandate forcing Plaintiff's member camps compile, create, and submit a new weekly database of proprietary customer/staff lists containing confidential information, and the undue harm caused by the Challenged Order's late notice on the eve of summer camp openings, which threaten these long-successful businesses, the livelihood of their staff, and the summers of their campers and families.

4.      Indeed, this case concerns the Challenged Orders' coercive aspects that hold hostage the member camps' ability to continue operating unless they pay ransom by means of forgoing their rights guaranteed under the State and Federal Constitutions.

5.      The Plaintiff's member camps are duly licensed, in good standing, and have all successfully passed their pre-opening, on-site inspections and are in full compliance with New York State Sanitary Code Subpart 7-2.

6.      The Plaintiff's member camps have successfully operated within Rockland County for many years, with staff drawn from the metropolitan New York City area, and serve a diverse clientele, including residents of various states, including New York and New Jersey, and international locations.

7.      The Plaintiff's member camps have no reported measles infections or exposures in either campers or staff.

8.      This lawsuit is necessary because the Challenged Orders require Plaintiff's member camps to compile, create new lists, and turn over an unprecedented amount of proprietary and confidential information about their businesses, staffers, and clients every Tuesday without interruption by unsecure facsimile transmission to the Health Department's general fax number.  No precompliance review, probable cause, notice, or any legal review is contemplated in connection with the bulk collection of this data.  There are no protections or restrictions on the use or dissemination of this proprietary and confidential data.  Plainly put, this case is brought because the Challenged Orders are an unlawful end-run around established restraints on governmental action and violate core constitutional rights under the Fourth Amendment to the United States Constitution and Article I, § 12 of the New York State Constitution. Mandatory reporting starts on July 2, 2019.

9.      Historically, the County, acting through its Commissioner, Board of Health, and Department of Health could obtain private information about businesses and citizens only by following the strict legal processes that protect constitutional rights and provide for review and challenge.  The Challenged Orders, issued just weeks before camps were scheduled to open, evades constitutional protections and historical ways of conducting business by mandating – under threat of withholding/revoking a license to operate, threat of legal liability, and substantial daily monetary fines – that camps holding the sought-after client data create, maintain, and continuously provide the information to the County every Tuesday via facsimile transmission to an off-site location, to the Department of Health general fax line.

10.     The Challenged Orders are not legislative acts reasonably tailored to achieving a legitimate governmental objective.[1]  Rather, they are Orders of Commissioner Ruppert, in violation of separation of powers, which are unsupported by reasonable suspicion as no targeted camp has been reported to be a location where a staffer or camper has been identified with communicable or contagious disease.  They profoundly alter the governing legislatively-enacted law, rules, and regulations for obtaining a permit to operate a camp in Rockland County, by requiring disclosure of proprietary information regarding staff and clients.  They seek to effectuate warrantless inspections of business records without judicial oversight.  Importantly, should a camp fail to comply, the camp's application for a permit will be denied and/or revoked, along with the imposition of concomitant substantial civil penalties up to $2,000 *per day.*  Thus, the Challenged Orders violate the constitutional protection against unreasonable search and seizure and will irreparably harm Plaintiff's member camp business, which if of such nature as causes a camp to close will risk removing member camps from Plaintiff's fold.

---

[1] As the Challenged Orders are not legislative acts, they are not entitled to any presumption of constitutionality.

4

11.     The Plaintiff also complains that the sought-after information will not be treated as confidential and protected.  Independent of the security concerns that forced submission to a general facsimile transmission line brings, some of the members of the County Board of Health, who are statutorily authorized to inspect and review all aspects of the Department of Health's business and affairs, are employed by and/or serve as trustees at local institutions, such as a local college(s) and Boards of Cooperative Educational Services ("BOCES"), which offer their own camps that compete for staff and clients in the same summer camp market and are not subjected to the same Challenged Orders.  For instance, Dr. Maureen Creegan is a Dean and Professor of Nursing at Dominican College, located in Orangeburg, New York.  Dominican College runs various summer camps for in excess of 1000 children between the ages of 6 and 14 (see https://www.chargerathletics.com/information/camps/summercamps_index).  Dr. Clement Osei, MD, FCCP, is a member of the Board of Trustees at Dominican College.  Dr. Mary Jean Marsico is the Superintendent and Chief Operating Officer of the Rockland County Board of Cooperative Educational Services ("BOCES) which runs a number of academic summer programs (see https://www.rocklandboces.org/summer-programs/).   No real restrictions or protections are placed on the use or dissemination of the sought-after information.

12.     This case is brought, accompanied by a request for preliminary and permanent injunctive relief, because the County, acting through its Board of Health, Commissioner, and inspectors, cannot put Plaintiff's member camps through this kind of coercive predicament by requiring them to give up constitutional rights, now and in the future.  The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures must be maintained.  The Plaintiff's business and the member camps' businesses cannot be placed at risk in such circumstances, where their propriety and confidential records and trade

secrets in the form of client and staff lists, including private, personal information, are seized, and/or forced to be surrendered under the threat of severe and irreparable punishment.

13.     As detailed hereinafter, Plaintiff seeks relief from: (a) the Commissioner's Orders directing the Plaintiff's member camps to compile, create and submit a new weekly database of proprietary customer/staff lists containing confidential information; and (b) the impact of the Commissioner's Orders' late notice that imposes an undue burden, hardship and renders impossible the member camps' ability to successfully perform all camp operations in the manner set forth therein during the Summer of 2019.

## THE PARTIES

14.     The Plaintiff, NEW YORK SECTION AMERICAN CAMPING ASSOCIATION, INC. d/b/a AMERICAN CAMP ASSOCIATION, NEW YORK AND NEW JERSEY, is a non-profit organization duly incorporated and existing under the laws of the State of New York, with its principal place of business located at 108 West 39th Street, 15th Floor, New York, New York 10018.

15.     Plaintiff is a member based representational association dedicated to preserving, promoting, and enhancing the quality of the summer camp experience.  Plaintiff is the only accrediting body for summer camps in the United States.  Plaintiff provides professional development to summer camp owners and directors; assists the public in finding suitable camps for their children; helps young people find summer camp jobs; and provides training and consulting to member camps.

16.     Plaintiff accredits over 400 summer camps in the Northeastern United States, including 17 camps operating in the County of Rockland whose members seek relief from the Challenged Ordinances.  These 17 camps County are a mix of not for profit, private, and

religiously affiliated summer camps. They are all in good standing having successfully undergone yearly compliance and meeting up to 300 standards in health and safety. Such accreditation evidences the education of camp owners and directors in the administration of key aspects of camp operation, particularly those related to program quality and the health and safety of campers and staff.

17.    Plaintiff' nationally recognized standards in health and safety focuses primarily on program quality and the health, safety, and risk management aspects of a camp's operation, in collaboration with experts from the American Academy of Pediatrics, the American Red Cross, and other youth-serving agencies, to assure that current practices at the camp reflect the most up-to-date, research-based standards in camp operation.

18.    The Defendant, PATRICIA S. RUPPERT, is, and at all times hereinafter mentioned was, Commissioner of the Rockland County Department of Health. Commissioner Ruppert was hand-picked and appointed by the County Executive.

19.    The Defendant, JEFFREY OPPENHEIM, is, and at all times hereinafter mentioned was, a Member of Rockland County Board of Health, serving as its Chair, residing in Rockland County.

20.    The Defendant, MAUREEN CREEGAN, is, and at all times hereinafter mentioned was, a Member of Rockland County Board of Health, serving as its Chair, residing in Rockland County.

21.    The Defendant, MARY JEAN MARSICO, is, and at all times hereinafter mentioned was, a Member of Rockland County Board of Health, serving as its Chair, residing in Rockland County.

22.     The Defendant, CLEMENT OSEI, is, and at all times hereinafter mentioned was, a Member of Rockland County Board of Health, serving as its Chair, residing in Rockland County.

23.     The Defendant, ANITA CHATLANI SHAH, is, and at all times hereinafter mentioned was, a Member of Rockland County Board of Health, serving as its Chair, residing in Rockland County.

24.     The Defendant, ROCKLAND COUNTY BOARD OF HEALTH, is, and at all times hereinafter mentioned was, an advisory board created pursuant to the Rockland County Charter.  The Board of Health advises the County Executive and the County Legislature in matters relating to the power and duties of the Commissioner of Health.  Among other powers, Board members have the power to inspect and review all facilities and programs of the Department of Health, with or without notice to the Commissioner of Health, and may report and make recommendation to the County Executive, County Legislature and Commissioner of Health. Any and all such reports shall be deemed public records and available for inspection at the offices of the County Executive, County Legislature and Commissioner of Health at all reasonable times.

25.     The Defendant, COUNTY OF ROCKLAND, is, and at all times hereinafter mentioned was, a municipal corporation duly organized and existing under the laws of the State of New York.

## JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §  1331 and 42 U.S.C. § 1983 because Plaintiffs allege a violation of rights under the Fourth and Fourteenth Amendments of the United States Constitution.

27.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiffs' claims arising under Article I, § 12 of the New York State Constitution because they are so related to the federal claims asserted in this action that they form a part of the same case or controversy under Article III of the United States Constitution.

28.     The Court may declare the legal rights and obligations of the parties in this action pursuant to 28 U.S.C. §§ 2201 and 2202 because the action presents an actual controversy within the Court's jurisdiction.

29.     Venue is proper under 28 U.S.C. § 1391 because the Defendants are located in and reside in this judicial district and in the State of New York, and because a substantial part of the events giving rise to the claims for relief occurred in this judicial district, or in the alternative, because the Defendants are subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

### A. Recent Rockland County Measles Outbreak

30.     In Rockland County, in late 2018, there was an outbreak of measles, which, by the way, is a reportable disease (see 10 NYCRR § 2.1).  The outbreak allegedly began in early October with the return to Rockland County of seven (7) unvaccinated travelers from Israel.

31.     Following the initial outbreak, in coordination with the New York State Department of Health, the Defendants instituted post exposure prophylaxis.  Isolation at home was recommended for those who had been exposed and lacked immunity.  Multiple vaccine clinics and distribution points were held to immunize those who were under vaccinated or unvaccinated.

32.     In November 2019, in response to the measles outbreak, New York State Department of Health Commissioner, Howard A. Zucker, MD, JD, designated Defendant

Patricia S. Ruppert, the Rockland County Department of Health Commissioner, to take steps to protect students at Rockland County schools and day cares from the measles outbreak. Defendant Commissioner was authorized to make exclusions of students from schools and day cares consistent with Public Health Law § 2164 and regulatory provision (see 10 NYCRR § 66-1.10) who are not adequately vaccinated against measles.

33.     As the measles outbreak in Rockland County expanded, the Defendants mapped home addresses of reported cases of measles, to identify geographic areas in which cases were occurring.  Based on an analysis of the maps, the Defendants determined that zip codes 10952 and 10977 contained the greatest concentration of cases and risk of measles transmission in school setting and directed that schools within these zip codes temporarily exclude all students who were not adequately vaccinated against measles, unless the schools had high vaccination rates.

34.     Defendant Commissioner exercised authority to exclude in cases where there was a confirmed case of measles within the school or day care, in locations near a school or day care with a confirmed case, or in locations in zip codes 10952 and 10977 where the school or day care has a low vaccination rate of less than 70%, which subsequently became less than 80%, and then less than 95%, to ensure herd immunity

35.     Thus, as of December 2018, the Defendant Commissioner had issued orders to schools in zip codes 10952 and 10977, directing such schools and day cares to temporarily exclude those students who were not adequately vaccinated against measles, and providing that such school remain subject to the Commissioner's order until they reach a vaccination rate of 95%, or 21 days after the last case of measles is identified in the community.  Under the order,

students could return to school if they submitted evidence of MMR vaccination or laboratory evidence of immunity to measles.

36.     As of March 10, 2019, in Rockland County, there were 145 confirmed cases of measles reported since October 2018 (with 83% involving individuals less than 19 years of age) with cases of measles continuing to be reported but at a reduced rate.  Additionally, as of March 10, 2019, temporary orders of exclusion were issued to approximately 60 schools, both secular and religious.   37 of those temporary orders of exclusion were lifted because the schools achieved a 95% vaccination rate.

37.     However, as the school year ends, the concern for the reach of the measles outbreak turned to summer camps within the Defendants' jurisdiction.[2]

38.     As of June 4, 2019, according to statements made by Defendants' county inspectors to Plaintiff's member camps, in Rockland County, there were only three (3) active cases of measles remaining.

39.     Nonetheless, on or about June 4, 2019, the Commissioner issued Orders addressed to the immunization of staff and campers at Plaintiff's member camps (the "Challenged Orders").

**B.  No Reports of Infection or Exposure to Campers/Staff at Plaintiff's Member Camps**

40.     To date, there have been no reports of infection or exposure to campers/staff at Plaintiff's Member Camps.

---

[2] Upon information and belief, the Challenged Orders apply onto the limited number of summer camps as defined under New York State Sanitary Code Subpart 7-2 and do not apply to the innumerable single use (i.e, sports, activity) camps or municipal playground programs that service thousands of children in Rockland each summer, and compete with Plaintiff's member camps for campers/staff in the marketplace.

### C.  **The Challenged Orders**

39.    The Challenged Orders were issued on or about June 4, 2019, merely twenty two days prior to the closing of local schools on June 26, 2019, and twenty three days prior to the opening day for most summer camps on June 27, 2019.

40.    By the Challenged Order concerning campers, Commissioner Ruppert required that, before the start of children's camps, all campers age four (4) or older must have two (2) doses of the MMR vaccine, or laboratory evidence of immunity to measles, mumps, and rubella. Children between the ages of 12 months and age 4 must provide documentation that they have received at least one (1) does of the MMR vaccine or laboratory evidence of immunity to measles, mumps, and rubella.  Documentation of vaccination must be signed by a physician, nurse practitioner, or a physician's assistant.  The only exception is if a camper is unable to receive a vaccination due to a medical reason.  Religious exemptions are not recognized under the Order.  Non-compliant campers must be excluded.  Member camps must create and maintain a "separate and complete list of vaccination status for all campers."  Furthermore, a pre-operational, on-site evaluation and inspection of the lists is required to establish compliance before a permit to operate will be granted, and thereafter, the sought-after information must be submitted to the County Department of Health by the close of business every Tuesday the camp operates.  Failure to comply shall result in denial of an application for a permit to operate or suspension and/or revocation of such permit, and, again, civil penalties may also be imposed.

41.    The Challenged Order regarding staff required that, before the start of children's camps, all staff born on or after January 1, 1957 provide documentation that they have received two (2) doses of the MMR vaccine, or laboratory evidence of immunity to measles, mumps, and rubella, signed by a physician, nurse practitioner, or a physician's assistant.   This covers

individuals whose childhood doctors may have died and the records destroyed.  For those unvaccinated or unable to obtain proof of vaccination, compliance within this time frame is virtually impossible on the face of the Challenged Orders which states that the two (2) MMR doses must be received at last 28 days apart.  The only exception is if a staffer is unable to receive a vaccination due to a medical reason. Religious exemptions are not recognized under the Order.  Those non-compliant must be excluded.  Member camps must create and maintain a "separate and complete list of vaccination status for all campers."  Furthermore, a pre-operational, on-site evaluation and inspection of the lists is required to establish compliance before a permit to operate will be granted, and thereafter, the sought-after information must be submitted to the County Department of Health by the close of business every Tuesday the camp operates.  Failure to comply shall result in denial of an application for a permit to operate or suspension and/or revocation of such permit, and, again, civil penalties may also be imposed.

42.    The Challenged Orders mandate the continued reporting of vaccination status to the Defendants, by submission of a client and staff list every Tuesday via facsimile transmission to the Rockland County Department of Health's general fax line.  Failure to do so shall result in the suspension and/or revocation of the permit to operate and the closure of the camp until compliance is met, along with civil penalties, including a fine of $2,000.00 per violation per day.

43.    Lastly, but certainly not least, the Commissioner's Orders afford unreasonable advance notice of implementation and may deprive member camps of valuable services of its staffers by reason thereof and the patronage of its customers.

**D.  The Business Concern, Privacy Issue, and Historical and Continued Compliance with the State Sanitary Code**

44.    Historically, pursuant to the State Sanitary Code, Plaintiff's member camps must meet the following "medical requirements":  "A current confidential medical history, including

the child's immunization record which shall include immunization dates against diphtheria, haemophilus influenza type b, hepatitis b, measles, mumps, poliomyelitis, rubella, tetanus and varicella (chicken poc), shall be kept on file for every camper and updated annually.   The camper's and staff's family or other responsible person's name, address and telephone to contact during an emergency shall be kept on file."   10 NYCRR § 7-2.8(c)(1).

45.     Plaintiff's member camps have historically been and continue to comply with the foregoing provision and all provisions of the State Sanitary Code.

46.     In this regard, prior to opening, county inspectors routinely visit the Plaintiff's member camps to confirm compliance with the requirements of the State Sanitary Code.  Such is permitted by the Sanitary Code, which provides that a permit-issuing official or its representative may enter the premises to ascertain compliance with the Sanitary Code prior to issuing a permit. However, nothing provided authority to examine and take records or files from the premises, or continually inspect the premises at dates and times of its own choosing.  Nothing required the member camps to create or provide these or any other records to the Defendants at any off-site location, certainly not before due process was afforded.

47.     By reason of the Challenged Orders, the Plaintiff's member camps must create, maintain, and surrender weekly a database of proprietary customer/staff lists containing confidential information, and feel the impact of the Challenged Orders' late notice that imposes an undue burden, hardship and renders impossible the member camps' ability to successfully perform all camp operations in the manner set forth therein during the Summer of 2019.  This is arbitrary, capricious, otherwise in violation of law and cannot stand.

## COUNT I

### *Violation of the Fourth and Fourteenth Amendments of the United States Constitution*

48.     Plaintiffs repeat, reiterate, and reallege each and every allegations in the preceding paragraphs as if fully set forth herein.

49.     The Challenged Orders, on their face and as applied, violate the member camp's rights guaranteed by the Fourth Amendment of the U.S. Constitution.

50.     The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

51.     The Fourth Amendment to the United States Constitution is made application to the States by virtue of the Fourteenth Amendment to the United States Constitution.

52.     In doing all of the things herein mentioned, Defendants acted under color of the statutes, regulations, customs, and usages of the County of Rockland and State of New York, for purposes of establishing "state action" under 42 U.S.C. § 1883.

53.     The business records and trade secrets of Plaintiff's member camps are protected under the Fourth Amendment.

54.     Plaintiff's members have a constitutional right to exclude others from prying into their business records and trade secrets.

55.     Plaintiff and its member camps also have a reasonable expectation of privacy in their business records.  The staff/client lists required by the Challenged Orders or statutory or regulatory scheme are business records, which contain private, confidential information relating centrally to the Plaintiff's and the member camps' businesses, in the form of commercially sensitive information about their businesses.  Plaintiffs take various measures to guard such

confidential business information from public disclosure, which is crucial for Plaintiff and the members camps to maintain their standing in the marketplace and business success.

56.     Plaintiff's staff and clients also have privacy interests in the non-public personal information they disclose to Plaintiffs.  Staff and clients expect that their private information will be used only for the limited purposes outlined in their respective privacy policies.  Plaintiffs share the interests of their staff and clients in maintaining their privacy, so that staff and clients will continue to have confidence in supplying information to Plaintiffs.

57.     The Fourth Amendment prohibits the government from executing an administrative search unless the subject of the search has "an opportunity to obtain pre-compliance review before a neutral decisionmaker."  See, e.g., City of Los Angeles v. Patel , 576 U.S. 440, 125 S.Ct. 2443, 192 L.Ed.2d 455 (2015); Airbnb, Inc. v. City of New York, 373 F.Supp.3d 467 (S.D.N.Y. 2019); and Airbnb v. City of Boston, 2019 WL 1981043 (D.Mass. May 3, 2019).

58.     The Challenged Orders and Regulation violates the Fourth Amendment to the United States Constitution because it improperly authorizes the County, through the Department of Health, to execute a continuing administrative search without any form of pre-compliance review.

59.     Plaintiff and its members have no adequate remedy at law for the harm and damage caused by Defendants' violation of their constitutional rights.

60.     Defendant has caused the Plaintiff and its member camps to suffer, and to continue to suffer, irreparable harm, damage and injury. The Plaintiffs will continue to suffer such damages unless the Defendants' acts and conduct complained of are preliminary and permanently enjoined.

61.     Pursuant to 42 U.S.C. § 1983 and the Court's equitable powers, Plaintiffs seek injunctive relief against the Defendants, whose enforcement of the Challenged Orders and Regulation would violate the Fourth Amendment.

## COUNT II

### *Violation of the Article I, § 12 of the New York State Constitution*

62.     Plaintiffs repeat, reiterate, and reallege each and every allegations in the preceding paragraphs as if fully set forth herein.

63.     Like the Fourth Amendment to the United States Constitution, Article I, § 12 of the New York State Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

64.     More than the Fourth Amendment to the United States Constitution, the New York State Constitution affords greater protection against warrantless searches than the United States Constitution.  See, e.g., 5 Borough Pawn, LLC v. City of New York, 640 F.Supp.2d 268, 278 (S.D.N.Y. 2009).

65.     The Challenged Orders, on their face and as applied, violate the member camp's rights guaranteed by Article I, § 12 of the New York State Constitution.

66.     The business records and trade secrets of Plaintiff's member camps are protected under Article I, § 12.

67.     Plaintiff's members have a constitutional right to exclude others from prying into their business records and trade secrets.

68.     Plaintiff and its member camps also have a reasonable expectation of privacy in their business records.  The staff/client lists required by the Challenged Orders or statutory or regulatory scheme are business records, which contain private, confidential information relating

centrally to the Plaintiff's and the member camps' businesses, in the form of commercially sensitive information about their businesses.  Plaintiffs take various measures to guard such confidential business information from public disclosure, which is crucial for Plaintiff and the members camps to maintain their standing in the marketplace and business success.

69.     Plaintiff's staff and clients also have privacy interests in the non-public personal information they disclose to Plaintiffs.  Staff and clients expect that their private information will be used only for the limited purposes outlined in their respective privacy policies.  Plaintiffs share the interests of their staff and clients in maintaining their privacy, so that staff and clients will continue to have confidence in supplying information to Plaintiffs.

70.     Article I, § 12 prohibits the government from executing an administrative search unless the subject of the search has "an opportunity to obtain pre-compliance review before a neutral decision maker."   See, e.g., Shankman v. Axelrod, 137 A.D.2d 255 (3d Dept. 1988), affirmed 73 N.Y.2d 203 (1989).

71.     The Challenged Orders and Regulation violates the Article I, § 12 of the New York State Constitution because it improperly authorizes the County, through the Department of Health, to execute a continuing administrative search without any form of pre-compliance review.

72.     Plaintiff and its members have no adequate remedy at law for the harm and damage caused by Defendants' violation of their constitutional rights.

73.     Defendant has caused the Plaintiff and its member camps to suffer, and to continue to suffer, irreparable harm, damage and injury. The Plaintiffs will continue to suffer such damages unless the Defendants' acts and conduct complained of are preliminary and permanently enjoined.

74.     Pursuant to Article I, § 12 of the New York State Constitution, 28 U.S.C. § 1367 and the Court's equitable powers, Plaintiffs seek injunctive relief against the Defendants, whose enforcement of the Challenged Orders and Regulation would violate Article I, § 12.

## COUNT III

### *Declaratory Relief pursuant to 28 U.S.C. §§ 2201and 2202*

75.     Plaintiffs repeat, reiterate, and reallege each and every allegations in the preceding paragraphs as if fully set forth herein.

76.     This action presents an actual controversy between Plaintiffs and Defendants concerning the validity and enforceability of the Challenged Orders and Regulation.

77.     Compliance with the Challenged Orders and Regulation will cause immediate, irreparable harm to Plaintiffs' privacy and Fourth Amendment rights, as well as the privacy and security of staff and clients.

78.     Based on the foregoing allegations, Plaintiffs are entitled to a declaration, pursuant to 28 U.S.C. § 2201, that the Challenged Orders and Regulations are invalid and cannot be enforced against Plaintiffs, its staff, and clients, because such enforcement would violate the Fourth and Fourteenth Amendments to the United States Constitution, and Article I, § 12 of the New York State Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

A.     Declare that the Challenged Orders and Regulation violate the Fourth Amendment to the United States Constitution because it improperly authorizes the County, through the Department of Health, to execute a continuing administrative search without any form of pre-compliance review;

B.     Declare that the Challenged Orders and Regulation violate Article I, § 12 of the New York State Constitution because it improperly authorizes the County, through the Department of Health, to execute a continuing administrative search without any form of pre-compliance review;

C.     Preliminarily and permanently enjoin the Defendants, their agencies, officers, agents, servants, employees, and attorneys, and all persons acting in concert or participation with them, from taking any actions to implement or enforce the Challenged Orders and Regulation;

D.     Award Plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

E.     Award Plaintiffs such other and further relief as the Court deems just and equitable.

Dated: South Nyack, New York
        July 1, 2019

Respectfully submitted,

**FEERICK NUGENT MACCARTNEY PLLC**

By: _____
        Donald J. Feerick, Jr. (DJF 3299)
        Mary E. Marzolla
        Patrick A. Knowles
96 South Broadway
South Nyack, New York 10960
(845) 353-2000

*Attorneys for Plaintiff*