UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
NEW YORK SECTION AMERICAN CAMPING
ASSOCIATION, INC. d/b/a AMERICAN CAMP
ASSOCIATION, NEW YORK AND NEW JERSEY,

                              Plaintiff,

           -against-                                              19-CIV-_____ (      )

PATRICIA S. RUPPERT, as Commissioner of Rockland
County Department of Rockland and as Commissioner of
Health of the Rockland County Health District, JEFFREY
OPPENHEIM, as Member of Rockland County Board of
Health, MAUREEN CREEGAN, as Member of Rockland
County Board of Health, MARY JEAN MARSICO, as
Member of Rockland County Board of Health, CLEMENT
OSEI, as Member of Rockland County Board of Health,
ANITA CHATLANI SHAH, as Member of Rockland
County Board of Health, ROCKLAND COUNTY BOARD
OF HEALTH, and COUNTY OF ROCKLAND, including
its DEPARTMENT OF HEALTH,

                              Defendants.
------------------------------------------------------------------------X

-----

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
ITS APPLICATION FOR A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION**

-----

*Respectfully submitted,*

**FEERICK NUGENT MACCARTNEY PLLC**
By:      Donald J. Feerick, Jr.
          Mary E. Marzolla
          Patrick A. Knowles
96 South Broadway
South Nyack, New York 10960
Tel.: (845) 353-2000

*Attorneys for Plaintiff*

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

 PRELIMINARY STATEMENT ......................................................................................... 1

INTRODUCTION .............................................................................................................. 1

STATEMENT OF FACTS ................................................................................................. 2

LEGAL STANDARD......................................................................................................... 3

ARGUMENT ...................................................................................................................... 3

    I.        PLAINTIFF AND ITS MEMBERS WILL SUFFER IRREPARABLE
            INJURY UNLESS DEFENDANTS ARE ENJOINED................................... 3

    II.      PLAINTIFF IS LIKELY TO SUCCEED ON THE MERITS OF ITS
            CLAIMS ......................................................................................................... 5

    III.     THE BALANCE OF THE EQUITIES AND PUBLIC INTEREST
            BOTH FAVOR PLAINTIFF .......................................................................... 14

    IV.    NO BOND IS REQUIRED UNDER THE CIRCUMSTANCES HERE........... 14

CONCLUSION .................................................................................................................. 15

TABLE OF AUTHORITIES

Page

**Cases**

5 Borough Pawn, LLC v. City of New York,
  640 F.Supp.2d 268 (S.D.N.Y. 2009). ............................................................... 6

A.T. by and through Tillman v. Harder,
  298 F Supp 3d 391 (N.D.N.Y. 2018) ........................................................... 4, 14

Airbnb, Inc. v. City of New York, ,
  373 F. Supp. 3d 467, 482 (S.D.N.Y. 2019). ............................................. 2, 7, 8, 9

Arizona v. Hicks,
  480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) ..................................... 7

ATM One, LLC v. Inc. Vill. of Hempstead,
  91 A.D.3d 585,  936 N.Y.S.2d 263 (2d Dept 2012) ................................... 9

Bery v. City of New York,
  97 F.3d 689 (2d Cir.1996) ................................................................. 4

Brass v. Hoberman,
  295 F Supp 358 (S.D.N.Y. 1968) ............................................................ 4

Camara v. Municipal Court of City & County of San Francisco,
  387 US 523 (1967) .......................................................................... 7, 10

City of Los Angeles, Calif. v. Patel,
  135 S Ct 2443, 192 L Ed 2d 435 (2015) ............................................ 2, 6, 9, 10, 11

City of Ontario v. Quon,
  560 U.S. 746, 130 S.Ct. 2619, 177 L.Ed.2d 216 (2010) .......................... 6

Collateral Loanbrokers Ass'n of New York, Inc. v. The City of New York and Bill De Blasio, as
  Mayor of the City of New York,
  No. 0303901/2014, 2019 WL 2395350 (N.Y. Sup Ct, Bronx County 2019) ........................... 2

Colonnade Catering Corp. v. United States,
  397 U.S. 12 (1970) ............................................................................ 6

Complete Angler, LLC v. City of Clearwater, Fla.,
  607 F Supp 2d 1326 (MD Fla 2009) ................................................... 14

Cont'l Oil Co. v. Frontier Ref. Co.,
    338 F.2d 780 (10th Cir. 1964) ................................................................ 14

Doctor's Assocs., Inc. v. Stuart,
    85 F.3d 975 (2d Cir. 1996) .................................................................... 14

Doe v. City of New York,
    15 F.3d 264 (2d Cir.1994) ...................................................................... 7

Donovan v. Dewey,
    452 U.S. 594 (1981) .............................................................................. 6

eBay, Inc. v. MercExchange, L.L.C.,
    547 U.S. 388 (2006) .............................................................................. 3

Elrod v. Burns,
    427 U.S. 347 (1976) .............................................................................. 4

Fed. Trade Comm'n v. Am. Tobacco Co.,
    264 U.S. 298, 44 S. Ct. 336, 68 L. Ed. 696 (1924) ............................... 7-8

Fed. Trade Comm'n v. P. Lorillard Co.,
    283 F. 999 (S.D.N.Y. 1922) ................................................................... 7

Ferguson v. Tabah,
    288 F.2d 665 (2d Cir. 1961) ................................................................. 14

Florida v. Jardines,
    133 S Ct 1409 (2013) .......................................................................... 8, 9

Freedom Holdings, Inc. v. Spitzer,
    408 F.3d 112 (2d Cir. 2005) ................................................................ 3, 4

G. M. Leasing Corp. v. United States,
    429 U.S. 338, 97 S. Ct. 619, 50 L. Ed. 2d 530 (1977) ............................. 7

Grand River Enter. Six Nations, Ltd. v. Pryor,
    481 F.3d 60 (2d Cir. 2007) ..................................................................... 3

Interphoto Corp. v. Minolta Corp.,
    417 F.2d 621 (2d Cir. 1969) ................................................................... 5

Jacobson & Co., Inc. v. Armstrong Cork Co.,
    416 F. Supp. 564 (S.D.N.Y. 1976), aff'd, 548 F.2d 438 (2d Cir. 1977) ...... 5

Kimball Laundry Co. v. United States,
    338 U.S. 1 (1949) ........................................................................................... 8

Koontz v. St. Johns River Water Mgmt. Dist.,
    570 U.S. 595, 133 S. Ct. 2586 (2013) ............................................................. 8, 9

Latino Officers Ass'n v. City of New York,
    966 F Supp 238 (S.D.N.Y. 1997) .................................................................... 4, 14

Ligon v. City of N.Y.,
    925 F.Supp.2d 478 (S.D.N.Y. 2013) ............................................................... 14

Local 1814, Int'l Longshoremen's Ass'n v. New York Shipping Ass'n,
    965 F.2d 1224 (2d Cir.1992) ........................................................................... 3

Marshall v. Barlow's Inc.,
    436 U.S. 307 (1978) ......................................................................................... 6, 8

Mitchell v. Cuomo,
    748 F.2d 804 (2d Cir.1984) ............................................................................. 4

N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.,
    704 F. Supp. 2d 305 (S.D.N.Y. 2010) ............................................................. 3

Nat'l Treasury Employees Union v. Von Raab,
    489 U.S. 656, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) ................................. 6

New York v. Burger,
    482 U.S. 691 (1987) ......................................................................................... 6

Petereit v. S.B. Thomas, Inc.,
    63 F.3d 1169 (2d Cir. 1995) ............................................................................ 4

Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co. of New York, Inc.,
    749 F.2d 124 (2d Cir. 1984) ............................................................................ 5

Ruckelshaus v. Monsanto Co.,
    467 U.S. 986 (1984) ......................................................................................... 8

See v. City of Seattle,
    387 US 541 (1967) ........................................................................................... 10

Semmes Motors, Inc. v. Ford Motor Co.,
    429 F.2d 1197 (2d Cir. 1970) .......................................................................... 5

Shankman v. Axelrod,
    137 A.D.2d 255 (3d Dept 1988), aff'd, 73 N.Y.2d 203, 535 N.E.2d 1323 (1989) ......... 2, 12, 13

Shapiro v. Cadman Towers, Inc.,
    51 F.3d 328 (2d Cir. 1995) ............................................................................. 3

Sokolov v. Vill. of Freeport,
    52 N.Y.2d 341, 420 N.E.2d 55 (1981).............................................................. 9

Statharos v. New York City Taxi and Limousine Comm'n,
    198 F.3d 317 (2d Cir.1999) ............................................................................. 4

Town of Brookhaven v. Ronkoma Realty Corp.,
    154 A.D.2d 665, 547 N.Y.S.2d 68 (2d Dept. 1989) ......................................... 9, 10

United States v. Am. Stevedores,
    16 F.R.D. 164 (S.D.N.Y. 1954) ....................................................................... 7

United States v. Biswell,
    406 U.S. 311 (1972).......................................................................................... 6

United States v. Jones,
    132 S. Ct. 945 (2012)....................................................................................... 6

Urban Ventures, Inc. v. McAulay,
    No. 119856/00, 2001 WL 36387861 (N.Y. Sup. Ct. July 06, 2001) ......................... 8

Warner Bros. v. Dae Rim Trading, Inc.,
    677 F. Supp. 740 (S.D.N.Y. 1988) ................................................................ 8

## Statutes

Article I § 12 of the New York State Constitution ........................................ 1, 2, 6, 15

U.S. Const. Amend. IV ................................................................................ 1, 2, 6, 15

U.S. Const. Amend. XIV ............................................................................. 15

## Other Authorities

Pub. Health Law § 1 ................................................................................... 10

Pub. Health Law §  2 .................................................................................. 10

Pub. Health Law § 206(2) ........................................................................................ 12

Pub. Health Law § 225(5) ........................................................................................ 10

Pub. Health Law § 225 (5-a) .................................................................................... 10

Public Health Law § 230(10)(k) .............................................................................. 13

Rockland County Sanitary Code § 1.18.8 ............................................................... 13

**Rules**

10 NYCRR § 7-2.4(d) .............................................................................................. 13

10 NYCRR § 7-2.8(c)(1). ........................................................................................ 13

10 NYCRR §§ 1.1 to 1001.16 .................................................................................. 10

Fed. R. Civ. P. 65 ...................................................................................................... 3

Fed. R. Civ. P. 65(b) ................................................................................................. 3

## PRELIMINARY STATEMENT

Plaintiff, New York Section American Camping Association, Inc. d/b/a American Camp Association, New York and New Jersey, submits this memorandum of law in support of its application for a temporary restraining order and preliminary injunction enjoining the Defendants from taking any action to implement or enforce the Department of Health Commissioner's Orders, dated June 4, 2019 (the "Commissioner's Orders" or the "Orders"), as unconstitutional under the Fourth Amendment to the United States Constitution and Article I § 12 of the New York State Constitution.

## INTRODUCTION

Rockland County, acting through its Department of Health Commissioner and its Department of Health (the "Department"), is holding hostage the Plaintiff's member camps' abilities to operate unless and until they forgo their rights guaranteed under the State and Federal Constitutions.  The member camps, or any other individual or business for that matter, cannot be put to this kind of coercive predicament requiring them to give up its constitutional rights, now and in the future.  They must be afforded at least an opportunity to contest the propriety of any search and seizure that the Department attempts to effectuate through the unelected Commissioner's Order.

More specifically, the Commissioner's Orders require member camps to create, maintain, and continually surrender to the Department a new "separate and complete list of vaccination status for all campers" and "camp staff."  The member camps are directed to create and submit new proprietary customer/staff lists containing the confidential information of each individual.[1]  The Orders mandate that this list be made available to the Department *via* unsecure facsimile

---

[1] Plaintiff member camps have both a property interest and reasonable expectation of privacy in the proprietary and confidential information at issue.  See, Point II, *infra*.

transmission to the Department's general fax number, every Tuesday during the summer camping season.  Under these Orders, should a member camp fail to comply, the camp's application for permit will be denied and/or suspended or revoked (if previously granted) and financial penalties imposed.

As explained herein, the Commissioner's Orders violate the Fourth Amendment to the United States Constitution and Article I § 12 of the New York State Constitution, as they unconstitutionally authorize a search and seizure scheme without a warrant or its equivalent. See, e.g., City of Los Angeles, Calif. v Patel, 135 S Ct 2443 (2015); Collateral Loanbrokers Ass'n of New York, Inc. v The City of New York and Bill De Blasio, as Mayor of the City of New York, No. 0303901/2014, 2019 WL 2395350 (N.Y. Sup Ct, Bronx County 2019); Shankman v. Axelrod, 137 A.D.2d 255 (3d Dept 1988), aff'd, 73 N.Y.2d 203 (1989); Airbnb, Inc. v. City of New York, 373 F. Supp. 3d 467, 482 (S.D.N.Y. 2019).

Simply put, this case raises the fundamental right of a business owner to insist that the Department's inspection and seizure of its records of customers and staff lists are constitutionally conducted.  Indeed, it goes to the heart of what the Constitution protects: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures . . . ."

Accordingly, this action seeks an order declaring that the Department of Health Commissioner's Orders are unconstitutional, facially and as applied, in violation of Article I § 12 of the New York State Constitution and the Fourth Amendment to the United States Constitution.

## STATEMENT OF FACTS

For brevity's sake, Plaintiff will not repeat the facts involving this case, except to the extent made necessary by the legal and factual arguments advanced below.  For a discussion of

2

the facts, the Court is respectfully referred to the accompanying Complaint and Declarations of Plaintiff's Attorney, Donald J. Feerick, Jr., Esq., and Plaintiff's Executive Director, Susie Lupert, as well as the exhibits annexed thereto.

## LEGAL STANDARD

A preliminary injunction is appropriate where, as here, Plaintiff demonstrates: (1) a likelihood of success on the merits; (2) a likelihood that, absent an injunction, it will suffer irreparable injury that cannot adequately be remedied at law; (3) a balance of hardships in its favor; and (4) that the public interest would not be disserved by the issuance of a preliminary injunction. Fed. R. Civ. P. 65; N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 328 (S.D.N.Y. 2010) (quoting and construing eBay, Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

The purpose of a temporary restraining order ("TRO") is to hold the status quo in place until the Court has an opportunity to hear a request for further relief. The TRO standard is the same as the preliminary injunction standard. See, e.g., Local 1814, Int'l Longshoremen's Ass'n v. New York Shipping Ass'n, 965 F.2d 1224, 1228 (2d Cir.1992); Fed. R. Civ. P. 65(b).

## ARGUMENT

**I.     Plaintiff and its members will suffer irreparable injury unless Defendants are enjoined.**

"A showing of irreparable harm is essential to the issuance of a preliminary injunction." Shapiro v. Cadman Towers, Inc., 51 F.3d 328, 332 (2d Cir. 1995). To demonstrate irreparable harm, the asserting party "must demonstrate that absent a preliminary injunction [it] will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm.'" Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60, 66 (2d Cir. 2007) (quoting Freedom Holdings, Inc. v. Spitzer,

408 F.3d 112, 114 (2d Cir. 2005)).  "[T]he moving party must demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered." Freedom Holdings, 408 F.3d at 114.

The loss of constitutional rights unquestionably constitutes irreparable injury.  Elrod v. Burns, 427 U.S. 347, 373 (1976); Statharos v. New York City Taxi and Limousine Comm'n, 198 F.3d 317, 322 (2d Cir.1999) ("Because plaintiffs allege deprivation of a constitutional right, no separate showing of irreparable harm is necessary.") (citing Bery v. City of New York, 97 F.3d 689, 694 (2d Cir.1996)); Mitchell v. Cuomo, 748 F.2d 804, 806 (2d Cir.1984) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary."); A.T. by and through Tillman v Harder, 298 F Supp 3d 391, 417 (N.D.N.Y. 2018) ("[T]here is a presumption of irreparable harm when there is an alleged deprivation of constitutional rights."); Brass v Hoberman, 295 F Supp 358, 361 (S.D.N.Y. 1968) ("Though it is not necessary, in an action charging denial of constitutional rights, to make a showing or irreparable harm to plaintiffs, the facts upon which plaintiffs base their right to relief must be undisputed or appear with such substantial clarity that the Court can weigh and determine the probability of success.") (citation omitted).  A TRO is thus appropriate here.  See Latino Officers Ass'n v City of New York, 966 F Supp 238, 238 (S.D.N.Y. 1997) (holding that Latino Officers Association was entitled to temporary restraining order prohibiting police department from preventing association members from marching in uniform in parade behind banner of their organization).

Even so, if irreparable harm is not presumed based upon the constitutional violation, the Second Circuit has made clear that the loss of business also results in irreparable harm; legal remedies are inadequate.  Petereit v. S.B. Thomas, Inc., 63 F.3d 1169 (2d Cir. 1995) (holding that

4

if a threatened loss of profits from changes in distribution system are of such magnitude as to endanger business' viability, an injunction might be appropriate); Roso-Lino Beverage Distributors, Inc. v. Coca-Cola Bottling Co. of New York, Inc., 749 F.2d 124, 128 (2d Cir. 1984) ("The loss of Roso-Lino's distributorship, an ongoing business representing many years of effort and the livelihood of its husband and wife owners, constitutes irreparable harm. What plaintiff stands to lose cannot be fully compensated by subsequent monetary damages."); Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1205 (2d Cir. 1970); Interphoto Corp. v. Minolta Corp., 417 F.2d 621, 622 (2d Cir. 1969); Jacobson & Co., Inc. v. Armstrong Cork Co., 416 F. Supp. 564 (S.D.N.Y. 1976), aff'd, 548 F.2d 438 (2d Cir. 1977) ("loss of the Armstrong line would jeopardize Jacobson's good will and create a risk of 'immeasurable harm' should Jacobson's customers and potential customers turn to competitors who do sell. He also concluded that the competitive disadvantage at which Jacobson would be placed were it unable to bid Armstrong products was neither calculable nor compensable in dollars and cents. We agree that Jacobson presented ample evidence to show a threatened loss of goodwill and customers, both present and potential, neither of which could be rectified by monetary damages.").  An inability to operate (by denial/revocation/suspension of a permit) – because of a refusal to forgo a constitutionally protected right – undoubtedly would cause substantial harm to the Plaintiff and its member camps.

## II.    Plaintiff is likely to succeed on the merits of its claims.

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV.[2]  By virtue of its incorporation through the Fourth Amendment's Due

Process Clause, the Fourth Amendment is binding on states and municipalities.  City of Ontario

v. Quon, 560 U.S. 746, 750 (2010).

The Court's resolution of this application should be informed by the longstanding

recognition that business records, including the to be created proprietary customer/staff lists at

issue here, are "papers" protected by the Fourth Amendment.  City of Los Angeles, Calif. v Patel,

135 S Ct 2443, 2452 (2015).  As per Patel and United States v. Jones, 132 S. Ct. 945 (2012), the

compelled inspection of a business's records always constitutes a search of property under the

Fourth Amendment, which must either be justified by a warrant or subject to one of the limited

exceptions to the warrant requirement.[3]  To be sure, the Supreme Court has repeatedly held that

"searches conducted outside the judicial process . . . are *per se* unreasonable . . . subject only to a

few specifically established and well-delineated exceptions."  Patel, 135 S Ct at 2452 (2015)

(quotations and citations omitted); Nat'l Treasury Employees Union v. Von Raab, 489 U.S. 656,

665 (1989) (holding that a search must generally be supported by a warrant issued upon probable

---

[2] Article I, § 12 of New York's Constitution is similarly worded.  Courts have held that this provision of the New York Constitution "affords greater protection against warrantless searches than the U.S. Constitution." 5 Borough Pawn, LLC v. City of New York, 640 F.Supp.2d 268, 278 (S.D.N.Y. 2009).

[3] One such exception is for administrative searches.  Patel, 135 at 2452.  For an administrative search to be constitutional under that exception, the subject of the search must be afforded an opportunity to obtain precompliance review before a neutral decisionmaker.  Id.  Here, there is no such opportunity, and therefore, the Commissioner's Order is not saved.

Likewise, the rarely applied closely-regulated industry exception is inapplicable here, as summer camps are not "pervasively regulated."  Marshall v. Barlow's, Inc., 436 U.S. 307, 313 (1978) ("the closely related industry . . . is the exception"); Patel, 135 S. Ct. at 2455 (2015) (holding that hotels are not "closely regulated").  The common feature of pervasively/closely regulated industries is they have "such a history of government oversight that no reasonable expectation of privacy could exist for a proprietor over the stock of such an enterprise." Marshall v. Barlow's, Inc., 436 U.S. 307, 313 (1978) (citation omitted); see Colonnade Catering Corp. v. United States, 397 U.S. 12 (1970) (licensed vendors of alcoholic beverages); United States v. Biswell, 406 U.S. 311 (1972) (licensed firearms dealers); Donovan v. Dewey, 452 U.S. 594 (1981) (mines and quarries); and New York v. Burger, 482 U.S. 691 (1987) (automobile junkyards).  The goods and workplace operations of these above-referenced businesses are pervasively regulated because of the special risks of danger or illegality they pose.  This unique exception does not extend to a business merely because it is subject to health or social legislation.  Indeed, if the regulations at issue here are enough to make summer camps "pervasively regulated," then there is effectively no business that would not be considered "pervasively regulated."  All businesses need a license to operate, and all businesses that serve the public are subject to regulations setting health and safety requirements and standards.

cause); accord Doe v. City of New York, 15 F.3d 264, 267 (2d Cir.1994) ("Extension of the right to confidentiality to personal medical information recognizes there are few matters that are quite so personal as the status of one's health, and few matters the dissemination of which one would prefer to maintain greater control over."). A business's right over its own records would have little, if any, practical value if those records could be forced from its hand at the government's calling.

The basic purpose of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." Camara v Municipal Court of City & County of San Francisco, 387 US 523, 530 (1967). Physical "entry is not required to trigger application of the Fourth Amendment." Airbnb, Inc. v. City of New York, 373 F. Supp. 3d 467, 482 (S.D.N.Y. 2019). "[T]he Supreme Court has recognized that governmental demands for the production of papers in which the holder has a protected privacy interest also implicate the Fourth Amendment." Id. at 482. "A search is a search, even if it happens to disclose nothing but the bottom of a turntable." Arizona v. Hicks, 480 U.S. 321, 325 (1987).

In fact, it is uncontroversial and well-established law that corporations and business premises are protected by the Fourth Amendment. See, e.g., G. M. Leasing Corp. v. United States, 429 U.S. 338, 353 (1977) (holding that business premises are protected by the Fourth Amendment, and corporations have Fourth Amendment rights); United States v. Am. Stevedores, 16 F.R.D. 164, 172 (S.D.N.Y. 1954) (holding that the Constitutional prohibition against unreasonable searches and seizures of its papers inures to corporation); Fed. Trade Comm'n v. P. Lorillard Co., 283 F. 999, 1006 (S.D.N.Y. 1922) ("It is now well established that a corporation is entitled to invoke the guaranties of the Fourth Amendment against unreasonable searches and seizures in as full a measure as would a person or partnership."), aff'd sub nom. Fed. Trade

Comm'n v. Am. Tobacco Co., 264 U.S. 298 (1924).   It follows, of course, that the Fourth

Amendment's protection of "papers" covers the records of a business.   See, e.g., Airbnb, Inc.,

373 F. Supp. 3d at 483; Patel, 135 S. Ct. at 2453 (2015) (applying Fourth Amendment

protections to business records); Marshall v. Barlow's Inc., 436 U.S. 307, 311 (1978) (Fourth

Amendment protects business property no less than residential property); Urban Ventures, Inc. v

McAulay, No. 119856/00, 2001 WL 36387861 (N.Y. Sup. Ct. July 06, 2001) (customer lists are

protected as trade secrets); c.f. Ruckelshaus v. Monsanto Co., 467 U.S. 986, 998 (1984) (holding

that plaintiff's trade secret qualified as private property despite extensive federal regulation of

pesticide industry).[4]

Thus, the business premises of the member camps and their "papers" and "effects" are

protected by the Fourth Amendment.   Id.; see also Warner Bros. v. Dae Rim Trading, Inc., 677 F.

Supp. 740, 765 (S.D.N.Y. 1988).   Whether the search and seizure arises in the criminal or civil

context is of no meaningful import.   Warner Bros., 677 F. Supp. at 765 (citing Marshall v.

Barlow's Inc., 436 U.S. 307, 311-13 (1978)).   It follows that because businesses and business

records are undeniably property protected by the Fourth Amendment, the Court need not even

inquire as to whether a business has a reasonable expectation of privacy in its customer records:

"The [Fourth] Amendment establishes a simple baseline, one that for much of our history formed

the exclusive basis for its protections: When the Government obtains information by physically

intruding on persons, houses, papers, or effects, a 'search' within the original meaning of the

Fourth Amendment has undoubtedly occurred."   Florida v. Jardines, 133 S. Ct. 1409, 1414

(2013) (citations omitted) (stating that while a reasonable expectation of privacy "may add to the

baseline, it does not subtract anything from the Amendment's protections . . . .").   To be sure, the

---

[4] The Camp has a cognizable property interest in its customer lists.   A company's assets, including its trade secrets, qualify as private property within the meaning of the Fifth Amendment.   See, e.g., Kimball Laundry Co. v. United States, 338 U.S. 1 (1949); Koontz v. St. Johns River Water Mgmt. Dist., 133 S. Ct. 2586 (2013).

Supreme Court, in Patel, made clear that business records are private property, and therefore businesses have "the right to exclude others from prying into the[ir] contents." Patel, 135 S Ct at 2448.[5]

The Commissioner's Orders, which trample on both the legislative and judicial branches, require non-consenting camps to submit to warrantless searches and seizures under the threat of denial and/or revocation of their permit to operate and of substantial monetary fines. Notably, "the government may not deny a benefit to a person because he exercises a constitutional right." Koontz v. St. Johns River Water Mgmt. Dist., 570 U.S. 595, 604 (2013). Such coerced consent routinely is held to violate the Fourth Amendment. See, e.g., Sokolov v. Vill. of Freeport, 52 N.Y.2d 341 (1981) ("It is beyond the power of the State to condition an owner's ability to engage his property in the business of residential rental upon his forced consent to forego certain rights guaranteed to him under the Constitution."); Town of Brookhaven v. Ronkoma Realty Corp., 154 A.D.2d 665, 666 (2d Dept. 1989) (holding that compelling property owner to submit to physical inspection of its property in obtaining necessary permit violated said property's Fourth Amendment rights); ATM One, LLC v. Inc. Vill. of Hempstead, 91 A.D.3d 585, 587 (2d Dept 2012), as amended (May 17, 2013) (holding unconditional an ordinance requiring a site inspection before a permit or renewal may be issued).

---

[5] In any event, camps clearly have a privacy interest in the data that the Department seeks. First, customer-facing businesses "do not ordinarily disclose, and are not expected to disclose . . . commercially sensitive information" such as "customer lists" or other customer-specific data. Patel v. City of Los Angeles, 738 F.3d 1058, 1061 (9th Cir. 2013) (en banc) (Watford, J.) aff'd, 135 S Ct 2443 (2015). Second, keeping its records private promotes better relations with, and mention of, its customers. Airbnb, Inc, 373 F. Supp. 3d at 485. A business has a significant proprietary interest in its customer records which gives rise to a reasonable expectation of privacy. See Florida v. Jardines, 133 S Ct 1409 (2013) at 1419 (Kagan, J., concurring) (observing that it is not surprising that there would be both a property interest and a reasonable expectation of privacy because "the law of property 'naturally enough influence[s]' our 'shared social expectations' of what places should be free from governmental incursions" (bracket in original)).

For example, in <u>Town of Brookhaven v. Ronkoma Realty Corp.</u>, 154 A.D.2d 665, 666 (2d Dept. 1989), the Second Department stated the following, in pertinent part, concerning this Fourth Amendment principle:

> [T]he ordinance at bar compels the owner of residential rental property to submit to a warrantless search. However, in so doing, the ordinance violates a property owner's right to be free from unreasonable searches as guaranteed by the Fourth Amendment to the United States Constitution *(see, Camara v Municipal Court* 387 US 523; *See v City of Seattle,* 387 US 541). Accordingly, the Town . . . may not compel the defendant to submit to a warrantless physical inspection of its premises, nor may it penalize the defendant for failing to comply with the permit requirements of the Zoning Code.

Nothing contained in the Public Health Law or the New York State Sanitary Code[6] bestows such expansive, unbridled, and constitutionally violative power upon the Commissioner as is set forth in, and attempted by, the Commissioner's Orders.  Nothing in either statutory or regulatory scheme [1] requires camps to maintain or produce the records required under the Order;[7] [2] permits the Department and its agents to inspect or compel production of records maintained by camps; or [3] condition a camp's very existence and operation on the inspection and warrantless production of camp records.  But that is what the Orders require, in addition to substantial monetary fines of $2,000 *per day*.[8]

_____

[6] The primary state law regulating matters of health and sanitation is the Public Health Law (Pub. Health Law §§ 1, 2) and the State Sanitary Code (10 NYCRR §§ 1.1 to 1001.16).  The Public Health Law states what the State Sanitary Code may deal with.  Pub. Health Law § 225(5), (5-a).

[7] Also relevant is that even if the Camp was required to create "a separate and complete list of vaccination status for all campers" to comply with statutory or regulatory requirements, neither the Camp's expectation of privacy in the records nor the Constitutional safeguards regarding protection of those records would be abolished. <u>Patel</u>, 135 S Ct at 2448 (2015) (stating, in affirming the Ninth Circuit: "The en banc court first determined that a police officer's nonconsensual inspection of hotel records under § 41.49 is a Fourth Amendment "search" because "[t]he business records covered by § 41.49 are the hotel's private property" and the hotel therefore "has the right to exclude others from prying into the[ir] contents.").

[8] Under the new scheme created by the Orders, the Department can close down camps that refuse to forgo their constitutional rights.  These Orders are outside the enabling statute, New York Public Health Law, and are inconsistent with both New York Public Health Law and the New York State Sanitary Code.  Permitting such action by the Commissioner and these Orders would have breathtaking implications: if validated, it would grant the

It is one thing for the Legislature to require that businesses maintain certain records, but quite another for the Commissioner, without legislation or legislative guidance, to require that businesses create and maintain certain records as well as permit her office to require the surrender of such records upon demand and threat of punishment.  No decision of this Court has ever sanctioned such a requirement, especially the latter.  Even in the face of legislation, the Courts do not sanction a government's avoidance of "legal process" by mandating access to records under the threat of denial/revocation of a permit to operate.  Simply stated, the Order is facially unconstitutional by reason of its authorization to inspect business records, and cannot succeed under any administrative search exception because there is no opportunity "obtain judicial review of the reasonableness of the demand prior to suffering penalties for refusing to comply." Patel v City of Los Angeles, 738 F3d 1058, 1065 (9th Cir 2013), aff'd City of Los Angeles, Calif. v Patel, 135 S Ct 2443 (2015) (citation omitted).  This procedural deficiency renders the Order unconstitutional.

In Patel, the Supreme Court struck down a city ordinance requiring hotels to permit the warrantless inspection of their guest records on the basis that it authorized a regime of unreasonable searches without opportunity for precompliance review before a neutral decision maker.  The plaintiffs there had challenged a requirement of the Los Angeles Municipal Code that hotel guest records "shall be made available to any officer of the Los Angeles Police Department for inspection," provided that, "[w]henever possible, the inspection shall be conducted at a time and in a manner that minimizes any interference with the operation of the business." Patel, 738 F3d at 1061, affd. Patel, 135 S Ct 2443.  The Ninth Circuit, which the Supreme Court affirmed, held that this requirement was facially invalid under the Fourth

_____

appointed, unelected Commissioner unchecked authority to require businesses and persons to produce its records, as almost everything we do can be said to have in furtherance of enforcing "public health."

Amendment.  Id. at 1065.  The Court had "little difficulty concluding" that the non-consensual inspection of hotel guest records constituted a Fourth Amendment "search."  Id.  The hotel's business records, including customer lists, were protected under the Fourth Amendment.  Id. at 1062.  Next, the Court determined that the searches authorized were not reasonable because "the Supreme Court has made clear that, to be reasonable, an administrative record-inspection scheme need not require issuance of a search warrant, but it must at a minimum afford an opportunity for pre-compliance judicial review, an element that the [Code] lacks."  Id. at 1063.  The Court held: "To comply with the Fourth Amendment, the city must afford hotel operators an opportunity to challenge the reasonableness of the inspection demand in court before penalties for non-compliance are imposed."  Id. 1064 (citations omitted).

Here, the Commissioner's Orders concerns proprietary business records and confidential information protected under the Fourth Amendment, and afford no opportunity to challenge the reasonableness of the inspection/surrender of those records before penalizing for failure to permit inspection/surrender.  The Orders are also unsupported by reasonable suspicion as none of Plaintiff's member camps have a reported case of measles or measles exposure.

The Patel decision is in accordance with the uncontroversial and well-established law of this State.  For example, in Shankman v. Axelrod, 137 A.D.2d 255 (3d Dept 1988), the Court held that the Department of Health does not have implied power under the Public Health Law to seek an inspection warrant authorizing the examination, removal, and copying of physician's patient records or files.  137 A.D.2d 255 (3d Dept 1988), aff'd, 73 N.Y.2d 203 (1989).  The Court rejected Respondent's reliance upon Public Health Law § 206(2), which authorizes the Department of Health Commissioner to examine and survey "all grounds, erections, vehicles, structures, apartments, buildings and places", as its justification for the use of an inspection

warrant because "that legislation plainly and unmistakably refers to the inspection of physical facilities, not to the examination of records or files. It must be assumed then that the Legislature intended that a subpoena, as contemplated by Public Health Law § 230(10)(k), be the exclusive vehicle for obtaining a recalcitrant physician's patient records . . . ." Id. at 257–58.

As relevant is here, the New York State Sanitary Code provides the following with respect to a camp's "medical requirements": "A current confidential medical history, including the child's immunization record which shall include immunization dates against diphtheria, haemophilus influenza type b, hepatitis b, measles, mumps, poliomyelitis, rubella, tetanus and varicella (chicken pox), shall be kept on file for every camper and updated annually. The camper's and staff's family or other responsible person's name, address and telephone to contact during an emergency shall be kept on file." 10 NYCRR § 7-2.8(c)(1). Nothing, however, requires the Camp to create or provide these or any other records to the Department.[9] To be clear, nowhere in either the Public Health Law or Sanitary Code is there a requirement that a camp must provide a copy of each and every child and/or staff member's current medical history or create and surrender a separate list to the Department upon demand. While the Sanitary Code provides that a permit-issuing official or its representative may enter the premises to ascertain compliance with the Sanitary Code prior to issuing a permit, nothing provides it any authority to examine or take records or files or to continually inspect the premises at its own choosing. See 10 NYCRR § 7-2.4(d). As Shankman makes clear, the Commissioner's Order attempting to increase the Department's power to examine, take, or require production of records is unconstitutional on its face and as applied.

---

[9] It must be noted that Rockland County's Sanitary Code provides the Commissioner's subpoena power, which may only be exercised where a formal hearing is commenced. R.C. Sanitary Code § 1.18.8.

III.    **The balance of the equities and public interest both favor Plaintiff.**

The balance of equities and public interest both favor enforcing Fourth Amendment rights.  Ligon v. City of N.Y., 925 F.Supp.2d 478, 541 (S.D.N.Y. 2013) ("[T]he public interest lies with the enforcement of the Constitution."); A.T. by and through Tillman v Harder, 298 F Supp 3d 391, 417 (N.D.N.Y. 2018); Latino Officers Ass'n v City of New York, 966 F Supp 238, 239 (S.D.N.Y. 1997) (Latino Officers Association was entitled to temporary restraining order prohibiting police department from preventing association members from marching in uniform in parade behind banner of their organization).

Moreover, Plaintiff does not dispute that Defendants have a strong interest in maintaining the health of the County.  So do Plaintiffs, like all residents and guests of the County.  But such an interest does not give Defendants the avenue to infringe on Constitutional rights through unexpected and illegal Commissioner's Orders, especially where, as here, reasonable suspicion is lacking.

IV.    **No bond is required under the circumstances here.**

In light of the constitutional nature of the claims asserted, and the strength of the evidence, a bond is not warranted under these circumstances.  District courts have "wide discretion in the matter of security and it has been held proper for the court to require no bond where there has been no proof of likelihood of harm."  Doctor's Assocs., Inc. v. Stuart, 85 F.3d 975, 985 (2d Cir. 1996) (quoting Ferguson v. Tabah, 288 F.2d 665, 675 (2d Cir. 1961); Cont'l Oil Co. v. Frontier Ref. Co., 338 F.2d 780, 782 (10th Cir. 1964) ("[T]he trial judge has wide discretion in the matter of requiring security and if there is an absence of proof showing a likelihood of harm, certainly no bond is necessary"); Complete Angler, LLC v City of Clearwater, Fla., 607 F Supp 2d 1326, 1335 (MD Fla 2009) (holding that no posting of a bond

14

was particularly appropriate when a plaintiff alleges the infringement of a fundamental constitutional right).

## **CONCLUSION**

Defendants, by way of two unexpected Orders issued by the County's unelected Commissioner of Health just weeks before summer camp season began, are holding Plaintiff's member camps hostage by mandating they either surrender their constitutional rights or otherwise lose their ability to operate. Plaintiff's member camps cannot be put to this kind of coercive predicament requiring they give up its constitutional rights, now and in the future, under threat of a denial/revocation/suspension of their permit to operate.

Accordingly, this Court should grant Plaintiff's application for a temporary restraining order and preliminary injunction, and enjoin the Defendants from taking any action to implement or enforce the Department of Health Commissioner's Orders, dated June 4, 2019, as unconstitutional and unlawful under the Fourth and Fourteenth Amendments of the United States Constitution and Article I § 12 of the New York State Constitution.

Dated: South Nyack, New York
         July 1, 2019

Respectfully submitted,

FEERICK NUGENT MACCARTNEY PLLC

By: _____
         Donald J. Feerick, Jr. (DJF 3299)
         Mary E. Marzolla
         Patrick A. Knowles
96 South Broadway
South Nyack, New York 10960
(845) 353-2000

*Attorneys for Plaintiff*

15